IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LAWRENCE ALLEN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 3:23-cv-119 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| DUSTIN FAIT AND TOWN OF | ) | |
| SMYRNA, TENNESSEE, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is the joint motion to dismiss (Doc. No. 17, "Motion") filed by Defendants, Dustin Fait and Town of Smyrna, which is accompanied by a supporting memorandum (Doc. No. 18). Plaintiff, Lawrence Allen, filed a response (Doc. No. 20), and Defendants filed a reply (Doc. No. 21). For the reasons stated herein, the Motion will be granted.

## FACTS

This case concerns a particular criminal case previously brought against Plaintiff in Rutherford County Criminal Court ("the state-court case").

For purposes of the instant motion, the Court accepts the following facts as true. On June 18, 2015, Plaintiff was arrested for aggravated rape and domestic assault of his-then wife, Kimberly Allen ("Ms. Allen"), based primarily on statements made by Ms. Allen to Defendant Fait, a Smyrna police officer. (Doc. No. 1 at 5). In her statements to Defendant Fait, Ms. Allen stated that Plaintiff had both struck her and penetrated her with his hand. (*Id.*). On June 22, 2015, the day prior to the original date for the preliminary hearing, Ms. Allen sent Defendant Fait two emails; one stated that Plaintiff did not rape her and that she had engaged in consensual intercourse

with another man in the early morning hours of June 18, 2015. (*Id.*). These emails were not disclosed to Plaintiff's then-counsel prior to the preliminary hearing. (*Id.*). At the preliminary hearing, eventually held in March 2016, both Defendant Fait and Ms. Allen testified and were cross-examined. (*Id.* at 6). Neither Defendant Fait nor Ms. Allen mentioned the emails or Ms. Allen's recantation of the rape allegation. (*Id.*). A few days after the preliminary hearing Ms. Allen was then murdered (unrelated to Mr. Allen). (*Id.*).

Plaintiff's then-counsel learned about the emails five months later during discovery with the state. (*Id.*). In light of the newly discovered evidence (*i.e.*, the emails), Plaintiff's then-counsel filed a motion in limine to exclude Ms. Allen's preliminary-hearing testimony from trial based on Tennessee Rule of Evidence 804,[1] the Tennessee Constitution,[2] and the Confrontation Clause of the United States Constitution.[3] (*Id.*). In support of the motion, Plaintiff's then-counsel argued that he did not have an adequate opportunity or similar motive to develop Ms. Allen's testimony on cross-examination during the preliminary hearing and did not have the opportunity for a "thorough investigation" regarding the unknown male with whom Ms. Allen had intercourse earlier in the evening, who could have provided exculpatory information. (Doc. No. 1-1 at 2–3). The trial court (Rutherford County Circuit Court) denied the motion, declared Ms. Allen unavailable, and found

---

[1] Tennessee Rule of Evidence 804(a) states that a witness who "cannot be present or testify at the trial or hearing because of death" is an unavailable witness. Therefore, Tennessee Rule of Evidence 804(b)(1) stipulates that the testimony given by such a witness at another hearing of the same or a different proceeding "is not excluded by the hearsay rule" except "if the party against whom the testimony is offered" did not "have an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination."

[2] An individual's right to confrontation is also guaranteed in Article I, Section 9 of the Tennessee Constitution which states that "that in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face." Tenn. Const. Art. I, § 9.

[3] The Confrontation Clause of the Sixth Amendment ensures that the accused in all criminal prosecutions "[s]hall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause applies through the Fourteenth Amendment to the States. *See McDonald v. Chicago*, 561 U.S. 742, 764–65 (2010).

that Plaintiff's then-counsel had an adequate opportunity, through cross-examination at the preliminary hearing, to develop Ms. Allen's testimony. (Doc. No. 1 at 6). Subsequently, at trial, the state played Ms. Allen's preliminary hearing testimony and introduced the emails as evidence. (*Id.*). Plaintiff was then convicted of both charges and sentenced to twenty years in prison. (*Id.* at 7).

On appeal, on December 10, 2020, the Tennessee Court of Criminal Appeals reversed the convictions and remanded for a new trial with instructions to exclude Ms. Allen's preliminary hearing testimony. (Doc. No. 1-1 at 35). The court explained that the "State's failure to furnish obviously exculpatory information in its possession before the preliminary hearing, coupled with the death of [Ms. Allen], the State's key witness, before Defendant was aware of the emails and before the Defendant had an opportunity to cross-examine [Ms. Allen] to determine the truthfulness of the email" collectively constituted a *Brady* violation.[4] (*Id.* at 28).

On remand, on April 8, 2021, Plaintiff entered a guilty plea to a lesser charge (for aggravated assault) and was given a sentence of three years (to be served at 30 percent) in the custody of the Tennessee Department of Corrections, all of which servable time was covered by prior jail credit; also, the trial court dismissed the remaining charges *nolle prosequi*.[5] (Doc. No. 19-1 at 4). On February 8, 2022, the Rutherford County Circuit Court entered an order to expunge all records relating to Plaintiff's Aggravated Rape and Domestic Assault charges. (Doc. No. 1-2).

---

[4] A *Brady* violation occurs when the prosecution fails to disclose evidence favorable to the defendant. (Doc. No. 1-1 at 20). The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[5] "The Latin phrase '*nolle prosequi*' literally means 'I am unwilling to prosecute.' This Court defined *nolle prosequi* 'as being a formal entry of record by the [district] attorney-general by which he declares that he will no longer prosecute the case.'" *State v. Harris*, 33 S.W.3d 767, 769 n.3 (Tenn. 2000) (citation omitted).

On February 7, 2023, Plaintiff filed the instant action under 42 U.S.C. § 1983[6] against Defendant Fait in his individual capacity and Defendant Town of Smyrna, Tennessee. (Doc. No. 1). The complaint sets forth the following four § 1983 claims: 1) *Brady* violation, against Defendant Fait, for allegedly failing to disclose the emails to Plaintiff's then-counsel and the prosecution at the preliminary hearing; 2) malicious prosecution, against Defendant Fait, in his individual capacity for allegedly influencing and participating in the decision to charge Plaintiff with aggravated rape and domestic assault; 3) failure to train on *Brady/Giglio*[7] obligations, against Defendant Town of Smyrna; 4) *Brady/Giglio* violation, against Defendant Town of Smyrna, for failure to disclose a misconduct report on Defendant Fait to Plaintiff's then-counsel and the prosecution. (*Id.* at 9–12).

Important for purposes of the instant Motion,[8] Plaintiff does not mention in his complaint anything about the guilty plea to the lesser charge and the dismissal of the original charges; instead

---

[6] Section 1983 allows individuals to bring claims of alleged federal constitutional violations caused by those allegedly "acting under the color of state law." *See* 42 U.S.C. § 1983.

[7] In *Giglio v. United States*, 405 U.S. 150, 154–55 (1972), the Supreme Court elaborated *Brady* to find that exculpatory evidence extends to information that can be used to impeach the credibility of witnesses. The prosecution in *Giglio* failed to disclose such information, and the Court found this failure amounted to a due process violation. *See id.*

[8] Consistent with the Court's statement of the legal standard below, a court generally may rely only on the four corners of the complaint in resolving a motion to dismiss. "A court considering a 12(b)(6) motion may consider materials in addition to the complaint if such are public records or otherwise appropriate for the taking of judicial notice." *Rodney v. LaHood*, 359 F. App'x 634, 637 (6th Cir. 2010). That is, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir.1999)); s*ee also Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

Defendants filed, contemporaneously with the Motion, the docket sheet of the state-court case. (Doc. No. 19-1). The Court is therefore satisfied that in resolving the instant Motion, it may consider the information reflected on the docket sheet. Despite its relevance to the timeliness of Plaintiff's claims, the complaint is conspicuously devoid of any mention of the fact or the date of the dismissal of Plaintiff's

he jumps straight to the later event of expungement. Setting aside whether Plaintiff should have made such mention in order to provide full context for his claims, the Court will focus on one important consequence of such omission. Specifically, the omission means that Plaintiff is not basing his claims in any way on his conviction on the (lesser) charge of aggravated assault or his sentence thereon. Rather, Plaintiff's claims are based only on his prior, more serious convictions and sentences that were reversed on direct appeal and were never reimposed in any way, shape or form.

Defendants filed the instant Motion, seeking dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims are untimely. As indicated above, a response and a reply have since been filed.

## LEGAL STANDARD

"A motion to dismiss based on the expiration of the statute of limitations is analyzed under Rule 12(b)(6)." *Dykema Excavators, Inc. v. Blue Cross & Blue Shield of Mich.*, 77 F. Supp. 3d 646, 652 (E.D. Mich. 2015) (internal quotation marks omitted) (quoting *Moseke v. Miller & Smith, Inc.*, 202 F.Supp.2d 492, 501 (E.D. Va. 2002)).

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause

---

original charges. However, as will become evident by the Court's analysis below, the date on which Plaintiff had the remaining charges dismissed is directly relevant to the timeliness of Plaintiff's claims. The docket sheet reflects the date on which he entered his guilty plea and the circuit court dismissed the original charges, and Plaintiff does not dispute the accuracy of the date thus reflected. (*Id.*).

of action, supported by mere conclusory statements, do not suffice." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. A legal conclusion, including one couched as a factual allegation, "need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of entitlement to relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *See id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *accord Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

DISCUSSION

As noted above, Defendants argue that Plaintiff's § 1983 claims should be dismissed because (according to Defendants) they are untimely.[9] "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). It is readily apparent, and the parties in this case do not dispute, that for the claims in this case, the relevant limitations period is one year under the applicable statute of limitations borrowed from state law. *See id.* (applying, to § 1983 claims, the one-year limitations period prescribed by Tenn. Code Ann. § 28-3-104(a)(3)). Although the Court looks to state law to identify the relevant statute of limitations, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *See id.* The Court therefore relies on relevant federal precedent to determine when the one-year limitations period began to run.

1. ***Heck v. Humphrey*** **states a specific rule about a particular kind of Section 1983 claim: if a claim is such that the plaintiff's success on it would imply the invalidity of a conviction or sentence of the plaintiff, the claim does not accrue (and the limitations period for the claim does not begin to run) until the conviction or sentence has been "invalidated" in one or more specified ways, including via reversal on direct appeal.**

The issues raised in Defendants' Motion require the Court to wade into a thorny area of the law occasioned by the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court finds it necessary to set forth a detailed analysis of (i) what *Heck* does and does not say,

---

[9] Defendants assert, and Plaintiff does not dispute, that the limitations period began running on the same date for all of Plaintiff's claims. In other words, neither Plaintiff nor Defendants argue that the limitations period for one of Plaintiff's claims may have begun running on a different date than the one on which the limitations period began running on one or more of Plaintiff's other claims. The Court's limitations analysis herein is therefore applicable to all of Plaintiff's claims.

what it does and does not mean, when it does and does not apply, and how it does and does not operate; and (ii) how the result seemingly indicated by *Heck* is crucially altered in many cases, including the instant one, by *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). In so doing, the Court will err on the side of redundancy and specificity, sacrificing brevity for clarity and thoroughness and believing this a worthwhile trade-off; the Court also will define certain terms to help lubricate a discussion that regrettably is dense—necessarily so, given the subject matter involved.

In *Heck*, the Supreme Court confronted issues presented by specific kinds of § 1983 claims, namely those that seek damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," *i.e.*, claims "that necessarily require the plaintiff to prove the unlawfulness of his conviction or [past or present] confinement." 512 US. at 486. Or in other words, a Section 1983 claim for which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. In an observation about terminology that is too significant to be relegated to a footnote, the Court notes that hereinafter it will refer to such claims as "*Heck*-contemplated claims." Importantly, this term excludes a claim that is based on a fact pattern wherein the plaintiff was never convicted or sentenced at all; such a claim is simply outside the scope of what *Heck* was referring to.

In *Heck*, the Court was concerned with the prospect that *Heck*-contemplated claims could interfere with criminal convictions or sentences in state court that had not been invalidated in some way (a "still-valid" conviction or sentence, in the terminology used herein). *See id.* at 484–85. Consider, for example, a plaintiff's § 1983 claim that state actors violated his right to be notified of exculpatory evidence under *Brady*. Such a claim could serve to undermine a still-valid criminal conviction, if in fact the plaintiff had a still-valid conviction; such a claim would amount to a

"vehicle[] for challenging the validity of outstanding [i.e., still-valid] criminal judgments," something the Supreme Court found "not appropriate." *Id.* at 486. In an effort to avoid interference of this kind, the Court (per Justice Scalia, writing for the majority) held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*See id.* at 486–87.[10] Herein, the Court refers to this holding as "*Heck*'s accrual rule," except when quoting others that use a different term for it.

Pertinent to the discussion below, the Supreme Court reached this holding by "analogy" to "[t]he common-law cause of action for malicious prosecution." *Id.* at 484. That is, it deemed common-law claims for malicious prosecution to be analogous to the plaintiff's claims because both sets of claims contemplate "damages for confinement imposed pursuant to legal process." *Id.*

---

[10] Sometimes courts refer to the things on this list—reversal of conviction or sentence on direct appeal, expungement by executive order, declaration of invalidity by an authorized state tribunal, or federal court's issuance of a writ of habeas corpus—as events reflecting "favorable termination." *See, e.g., Savory v. Cannon*, 947 F.3d 409, 419 (7th Cir. 2020) ("The *Heck* bar accounts for the preclusive effect of state court criminal judgments on civil litigation by lifting the bar only when the plaintiff has achieved a favorable termination of the criminal proceeding."). This is fair enough; these things can each reasonably be viewed as effecting for a criminal defendant "favorable termination," at least temporarily, of criminal charges or a criminal prosecution. But the Court must note that *Heck*'s accrual rule is framed in terms of a list of *particular kinds of things* that one may choose to call "favorable termination," and not in terms of *other* kinds of "favorable termination" not on that list, nor in terms of "favorable termination" itself, nor in terms of a differently-named general concept that could have been called "favorable termination,"—all of which conceivably could help define the concept of "favorable termination" applicable in the context of common-law claims of malicious prosecution to which the Supreme Court analogized in *Heck* but are not mentioned in *Heck*'s accrual rule. In *Heck*, Justice Scalia's majority opinion went so far as to *repeat* the list, making clear that for a claim that implied the invalidity of an underlying conviction or sentence of the plaintiff, accrual occurred if (but *only* if) one of the events on the list had occurred; for such a claim, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. at 489.

The Court then noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* The Court essentially reasoned that because the common-law cause of action for malicious prosecution is a suitable analog to the kinds of § 1983 claims at issue in *Heck*, such claims[11] (hereinafter, "malicious-prosecution-analogous" claims) should be subject to an analogous rule; whereas a successful common law malicious-prosecution claim requires "termination of the prior criminal proceeding in favor of the accused," a successful § 1983 action of the kind at issue in *Heck* required that the "[applicable] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 484, 487.

Further explaining the upshot if its above-referenced holding, the Court in *Heck* stated:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the

---

[11] Other kinds of § 1983 claims are *not* malicious-prosecution-analogous, but rather are analogous to other kinds of common-law claims, and thus are not subject to the *Heck*'s accrual rule. In *Wallace*, for example, the Court noted that the closest analogy to the § 1983 claims there at issue (which were all based on the plaintiff's arrest in violation of the Fourth Amendment) were common-law claims for false arrest or false imprisonment. 549 U.S. at 388. And so "[t]he Supreme Court clarified in *Wallace* that the rule in *Heck* does not extend to claims for false arrest or false imprisonment . . . ." *King v. Hardwood*, 852 F.3d 568, 578 (6th Cir. 2017). Instead, for the kinds of claims at issue in *Wallace*, the limitations period began running "when the alleged false imprisonment ends" and not when a conviction or sentence was invalidated. (Notably, and for reasons on which the undersigned need not dwell, *Wallace* here was very intentional about speaking in terms of the date the limitations period began running, rather than the date of accrual. 594 U.S. at 393.).

Importantly, though, a *Brady* claim *is* malicious-prosecution-analogous. *See Jordan v. Blount County*, 885 F.3d 413, 415 (6th Cir. 2018). So every one of Plaintiff's claims (one of which is styled as a claim of malicious prosecution and the other three of which are styled as *Brady* claims) is malicious-prosecution-analogous; therefore, they could and would be *Heck*-contemplated claims, but only to the extent that they are based on a fact pattern that includes a conviction or sentence still valid at the time of the filing of the complaint.

plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. *Heck* is clear about the kind of Section 1983 claim to which its rule applies: "[a] claim for damages bearing [a particular] relationship to a conviction or sentence." *Id.* By its terms, *Heck*'s accrual rule does not apply to claims of other kinds, in particular claims (i) of a plaintiff who *never* sustained any conviction or sentence; or (ii) that do not seek recovery for harm from any conviction or sentence that the plaintiff *did* happen to sustain. The relationship at issue is to the effect that the claim would, if prosecuted successfully to judgment, imply the invalidity of the conviction or sentence the plaintiff actually had received previously. *Heck* applies to claims of this kind; it is such claims that are "*Heck*-contemplated claims" as the undersigned has coined the term herein.[12]

Although courts have used an array of terminology to refer to primary effect of the above-stated rule, the Supreme Court in *Heck* described the rule as a "bar" that prevents *Heck*-contemplated claims from becoming "cognizable" when success on such claims would "render a conviction or sentence invalid." *See id.* In other words, if a particular cause of action under Section 1983 would imply the invalidity of the plaintiff's conviction or sentence, the rule "den[ied] the existence of [that] cause of action" under Section 1983 "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *See id.*

---

[12] As indicated above, *Heck*'s real concern was with claims that imply the invalidity of a *still-valid* conviction or sentence. If a plaintiff's conviction or sentence is no longer valid, claims implying their invalidity present no legitimate concerns about interference with state court convictions or sentences—which is why *Heck* prescribes no bar to bringing claims in such circumstances, and instead reserves its bar only for claims implying the invalidity of a sentence or conviction that is not yet invalid (and may never be invalid). However, as further noted herein, *Heck* can operate not only in this "defensive" fashion—i.e., to bar claims where there is a still-valid conviction or sentence—but also "offensively" to delay the accrual of a plaintiff's cause of action (thus giving the plaintiff more time to file suit by extending the expiration of the limitations period). As a practical matter, however, *Heck*'s offensive use is properly limited to situations where there was a conviction or sentence but it is not still valid; if there is a still-valid conviction or sentence, the *Heck* bar will apply, and so the offensive use of *Heck* is never even implicated because the claim is barred irrespective of any limitations analysis.

at 489. Furthermore, in writing for the majority, Justice Scalia implied[13] the existence of a secondary effect of the rule, suggesting in essence that because the "bar" operated to prevent the accrual of the claim thus barred, the limitations period did not begin running until such bar was removed:[14]

---

[13] To be clear, this was only an *implication* from Justice Scalia; it was not a holding, inasmuch as the Court found it "unnecessary for us to address the statute-of-limitations issue wrestled with by the Court of Appeals[.]" *Heck*, 512 U.S. at 489. However, in context, it appears that Justice Scalia was addressing the "statute-of-limitations issue" at least enough to imply that the limitations period began running at the time of accrual as defined in *Heck;* it was other aspects of the "statute-of-limitations issue" (such as the Court of Appeals' view that "a federal doctrine of equitable tolling would apply to the § 1983 cause of action while state challenges to the conviction or sentence were being exhausted," *id.*), that did not need to be reached.

[14] The concepts of "accrual" and the *beginning of the running of a limitations period* are often improperly conflated, as if the former automatically triggers the latter. That is *usually* the case, but it is not *necessarily* the case. As the undersigned noted years ago, "the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so." Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1036 (1997). "As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual." *Id*. at 1036-37. But again, that is not automatically the case. True, courts' language often suggests otherwise by conflating when a claim's limitations period began running with when the claim accrued. *E.g.*, *McDonough*, 139 S. Ct. at 2155 (equating, without analysis, the "time when the statute of limitations begins to run" with "the time at which a § 1983 claim accrues"). But the Supreme Court itself has indicated that any such suggestion is misguided. *See Wallace*, 549 U.S. at 393 (clearly indicating a distinction between "the date of accrual" of a § 1983 claim and "the date on which the statute of limitations began to run" on such claim).

Relatedly, the concept of "accrual" has connotations that transcend the issue of when a limitations period begins to run, as the undersigned has noted more recently:

> It bears mentioning—on a point that seems widely understood but rarely articulated—what it means to s[ay] that a cause of action has accrued: that the claim (to use a familiar metaphoric term) ripe, *i.e.*, no longer premature as it was prior to the time of accrual. *See Davidson Cnty. v. Beauchesne*, 39 Tenn. App. 90, 96, 281 S.W.2d 266, 269–70 (1955) (noting that "if the cause of action had not accrued[, then] the suit was premature").

*Pinnacle Bank as trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Md.*, 598 F. Supp. 3d 666, 673 n.6 (M.D. Tenn. 2022). And, as indicated above, in some cases a discussion about when a limitations period began to run on a claim can be had without any reference to when the claim accrued. None of this, though, is to dispute that it would be odd for a limitations period to begin running on a claim before the claim "accrued" in the sense just discussed above, i.e., ceased being premature.

> [U]nder our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*See id.* at 489–90 (citations omitted).

As suggested in a footnote herein, generally a plaintiff's claim accrues (in the primary sense meant by Justice Scalia) when it becomes viable in that something *required* for allowing the claim to proceed—which the Sixth Circuit has referred to, arguably in a non-technical and inexact manner, as an "essential element of [the plaintiff's] claim[15]—is no longer absent. However, "*Heck* modified the general rule of accrual for § 1983 actions by 'delay[ing]' what would otherwise be the accrual date of a tort action until the setting aside of an *extant conviction* [i.e., still-valid conviction] which success in that tort action would impugn." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Wallace*, 549 U.S. at 393) (alteration and emphasis in original). Therefore, a plaintiff does not have a presently viable cause of action for *Heck*-contemplated claims until the invalidation of the criminal conviction or sentence from which the harm underlying those claims arises. *See id.*

---

The term "accrual" as employed by Justice Scalia evidently referred primarily to when *a claim becomes ripe, i.e., viable in that its essential elements at least conceivably could all be satisfied,* and not necessarily to when *the limitations period begins to run on the claim. See Eidson,* 510 F.3d at 638 (noting that *Heck* "held that Heck's cause of action would not even accrue (i.e., an essential element of his claim would not be satisfied) until Heck's conviction were reversed or vacated on direct appeal or otherwise"). In other words, "accrual" as used by the Supreme Court in *Heck*, meant "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *See Wallace*, 549 U.S. at 388.

As explained herein, the time of accrual of a *Heck*-contemplated claim happens also to be the time that the limitations period begins to run on the claim, although that was not Justice Scalia's primary focus here.

[15] *Eidson*, 510 F.3d at 638.

The undersigned must emphasize that contrary to what certain judicial discussions of *Heck* might suggest, *Heck*'s holding is *not* only or specifically about when a § 1983 claim *for malicious prosecution in particular* is properly deemed to accrue (accrue, that is, in the *Heck*-specific sense discussed above). Indeed, it is far from clear that the plaintiff in *Heck* brought any claim that was, strictly speaking, a malicious-prosecution claim. That is, *Heck* does not state a rule for determining the accrual date for a § 1983 "malicious prosecution" claim in particular. Instead, *Heck* drew an analogy between common-law malicious prosecution claims in general—which are *not* § 1983 claims but rather state-law claims—and *a certain kind of § 1983 claim*, *i.e.,* a Section 1983 claim seeking damages for confinement imposed pursuant to legal process (which may or may not be best characterized as a "malicious-prosecution" claim).[16] In *Heck* and also thereafter, the Supreme Court has been clear about how this kind of analysis works: the common-law analog for a type of Section 1983 claim is identified,[17] and the accrual rule for that analog helps the Court determine

---

[16] Indeed, the characterization of *any* Section 1983 claim under the Fourth Amendment as a claim for "malicious prosecution" as such is dubious:

> The Supreme Court, however, "has not yet decided whether there is a cognizable claim for malicious prosecution under the Fourth Amendment." *Howse v. Hodous*, 953 F.3d 402, 408 n.2 (6th Cir. 2020); *cf. McDonough v. Smith*, — U.S. —, 139 S. Ct. 2149, 2156 n.2–3, 204 L.Ed.2d 506 (2019). And our cases have long bemoaned the "malicious-prosecution" label. We have said that this label is "somewhat of a misnomer," *Gregory*, 444 F.3d at 747, calling it "both unfortunate and confusing," *Sykes*, 625 F.3d at 310 (citation omitted). But we found ourselves "'stuck with that label' in part because of its use by the Supreme Court and other circuits." *King*, 852 F.3d at 580 (citation omitted).

*Jones v. Clark Cnty*, 959 F.3d 748, 778 (6th Cir. 2020) (Murphy, J., concurring in part and dissenting in part), *abrogated by Thompson v. Clark*, 596 U.S. 36 (2022). And perhaps a Section 1983 for malicious prosecution as such does not arise under any other constitutional provision, either. *See Manuel v. City of Joliet*, 580 U.S. 357, 374 (2017) (Alito, J., dissenting). The good news for those chagrined by references to "malicious prosecution" claims under Section 1983 is that *Heck* does not speak in terms malicious-prosecution claims under Section 1983; it speaks instead in terms of malicious-prosecution-analogous claims under Section 1983.

[17] Notably, to say that a Section 1983 claim is analogous to a certain kind of common-law claim is *not* to say that the definition of the analogous common-law claim (for example, "malicious prosecution") is the

the appropriate accrual rule for the analogous § 1983 claim.[18] *See, e.g.*, *McDonough*, 139 S. Ct. at 2156. And the rule for *Heck*-contemplated claims (i.e., malicious-prosecution-claims seeking damages for harms that actually resulted in a sentence or conviction) is that accrual occurs only when "'the conviction or sentence has already been invalidated.'" *Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 392 (6th Cir. 2022) (quoting *Heck*, 512 U.S. at 487).

In summary, *Heck* applies only to a § 1983 claim[19] that (a) is malicious-prosecution-analogous, i.e., seeks damages for confinement imposed pursuant to legal process; (b) involves a fact pattern that actually includes one or more convictions or sentences of the plaintiff; and (c) seeks recovery for "harm caused by action whose unlawfulness would render [that] conviction or sentence invalid."[20] (As noted above, herein such a claim is called a "*Heck*-contemplated claim.").

_____

definition of the Section 1983 claim at issue. *See McDonough*, 139 S. Ct. at 2156 ("As noted above, this Court often decides accrual questions by referring to the common-law principles governing analogous torts. These principles are meant to guide rather than to control the definition of § 1983 claims, such that the common law serves more as a source of inspired examples than of prefabricated components." (internal quotation marks omitted)).

[18] That is not to say, however, that the accrual rule for the type of Section 1983 claim at issue ends up being *identical* to the accrual rule for the common-law analog; as suggested in the quote from *McDonough* in the footnote above, principles governing accrual for analogous common-law torts serve merely as a guide for the accrual rule for the Section 1983 claim. And in *Heck*, the accrual rule for *Heck*-contemplated claims was not stated in a way that came close to verbally matching the accrual rule for common-law malicious prosecution claims.

[19] "It is worth emphasizing that "*Heck* itself applied only to actions under Section 1983." Rachel E. Brodin, *Remedying A Particularized Form of Discrimination: Why Disabled Plaintiffs Can and Should Bring Claims for Police Misconduct Under the Americans with Disabilities Act*, 154 U. Pa. L. Rev. 157, 189 (2005). *Heck* provides an accrual rule only for Section 1983 claims, and indeed only for some kinds of Section 1983 claims (i.e., *Heck*-contemplated claims). The Court notes that sometimes herein it specifically refers to *Heck*-contemplated claims being Section 1983 claims, but other times it forgoes doing so since that is built into the term "*Heck*-contemplated claims" anyway.

[20] *Heck*'s accrual rule plainly cannot be said to apply to a plaintiff's claim unless success on the claim "would necessarily imply the invalidity of his conviction or sentence[.]" 512 U.S. at 487. Even so, *McDonough* notes that certain "principles and reasoning" of *Heck* can apply to the question of when the limitations period begins to run on § 1983 claims that fall outside *Heck's* accrual rule (i.e., are not Heck-contemplated claims) because they are not based on "action whose unlawfulness would render a conviction

So a claim is *not* a *Heck*-contemplated claim, and thus is not subject to *Heck*'s particular accrual rule, unless it is based on underlying circumstances that *include* a conviction or sentence—and, more specifically, a conviction or sentence that would be rendered invalid by the unlawfulness of action that plaintiff says was taken and harmed him or her.

Some claims, though superficially resembling *Heck*-contemplated claims, actually are no such thing, because they do not satisfy *all three* criteria for *Heck*-contemplated claims. For instance, the claims in *Wallace* (i) involved a fact pattern including a conviction and sentence, 549 U.S. at 386–87, but (ii) did not seek damages for harms related to the conviction and sentence, *id.* at 390 (noting that damages for false arrest cover the time of detention only until issuance of process or arraignment), and (iii) were most analogous to common-law claims of false arrest and false imprisonment (which seek damages for confinement *without* legal process) rather than common-law claims of malicious prosecution. *Id.* at 388. Accordingly, the Court in *Wallace* did not follow *Heck*'s accrual rule, but rather a different accrual rule. *E.g., id.* at 384–85, 393, 397 (holding that the "limitations [period for] § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process").[21]

On the other hand, the § 1983 fabricated-evidence claims in *McDonough* (i) were malicious-prosecution-analogous, 139 S. Ct. at 2154–55, but (ii) were based on a fact pattern

---

or sentence invalid," inasmuch as the plaintiff was never convicted or sentenced. *McDonough*, 139 S. Ct. at 2149.

[21] The quote here from *Wallace* refers specifically to the time that the limitations period began running, not to the time of accrual. But elsewhere the Court in *Wallace* strongly implied that it was equating the time that the limitations period begins running with the time of "accrual." *See, e.g.*, 549 U.S. at 391 (describing the time at which, "[under] the traditional rule of accrual . . . [a] tort cause of action accrues, and the statute of limitations commences to run") (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526–27 (1991)).

involving no conviction or sentence, and (iii) accordingly did not seek any damages for harms resulting from any conviction or sentence. *Id.* at 2154 (noting that the plaintiff's first trial ended in a mistrial and second trial ended in an acquittal); *id.* at 2157 ("This case differs from *Heck* because the plaintiff in *Heck* had been convicted, while McDonough was acquitted."). And so in *McDonough*, a case involving malicious-prosecution-analogous claims, the Supreme Court was compelled to pronounce an *alternative* to the *Heck* accrual rule for malicious-prosecution-analogous claims that (i) do not involve an actual conviction or sentence but (ii) imply that any sentence that could be (or could have been) imposed would be (or would have been) invalid. Specifically, *McDonough* held that "*Only once the criminal proceeding has ended in the defendant's favor*, or a resulting conviction has been invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *McDonough*, 139 S. Ct. at 2158 (citation omitted) (emphasis added).[22] The rule italicized above is applicable, alternatively to *Heck*'s accrual rule, to a claim that (like a *Heck*-contemplated claim) is malicious-prosecution-analogous even when (unlike a *Heck*-contemplated claim) it is *not* based on some conviction or sentence that actually was imposed. (Such a claim is not a *Heck*-contemplated claim and is referred to herein as a *McDonough*-contemplated claim because it refers to a kind of claim contemplated by *McDonough* but not *Heck*).

Returning to *Heck-contemplated* claims, the undersigned notes that *Heck* did *not* say that accrual of *Heck*-contemplated claims required "termination of the prior criminal proceeding in favor of the accused[,]" even though such *was* required for common-law claims of malicious prosecution. 512 U.S. at 484. Instead, *Heck* said that accrual of *Heck*-contemplated claims required

---

[22] The Supreme Court elsewhere clearly equated the time the limitations period begins to run with the time of accrual. *See id.* at 2155 (stating that "[t]he question here is when the . . . limitations [period] began to run[,]" then promptly moving into an "accrual analysis" to answer that question).

that the applicable "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 487. In other words, *Heck* described the trigger for accrual of a *common-law claim* of malicious prosecution as "termination of the prior criminal proceeding in favor of the accused [i.e., the plaintiff]," *id.* at 484, but described the trigger for accrual of *Heck*-contemplated claims as "invalidat[ion]" of the conviction (or sentence). *See id.* at 489–90 ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (citations omitted)).

The two triggers are not the same thing; *Heck* suggested as much when it took pains to describe the respective triggers in different ways. And, as indicated above, *McDonough* made a clear distinction between the two triggers, stating *either one or the other of the triggers would apply*. And the two triggers do not necessarily occur at the same time in any particular case.[23] And yet courts sometimes have treated the two accrual triggers as the same, treating the trigger for *Heck*-contemplated claims as termination of the criminal proceeding (or "prosecution") in favor of the plaintiff. *See, e.g., Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (invoking *Heck*, in a case where the plaintiff brought a *Brady* claim under § 1983 after his conviction and sentence had been set aside, for the proposition that a *Brady* claim "cannot accrue, therefore, until the criminal proceeding so terminates"). But whatever the reason for such treatment in those particular prior cases, the distinction exists and must be honored by the Court in this case.

---

[23] Plaintiff makes this point persuasively. (Doc. No. 20 at 13-14 (quoting *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 (9th Cir. 2020))).

As discussed above, when *Heck*'s accrual rule operates to delay the accrual for *Heck*-contemplated claims beyond what it otherwise potentially might be, *Heck*'s accrual rule also delays the time at which the limitations period begins running for such claims. And as discussed in a footnote above, this means that *Heck's* accrual rule can be invoked not only "defensively" by a defendant to "bar" a claim as premature because it has not yet accrued, but also "offensively" by a plaintiff to avoid a limitations defense to delay the "accrual" date and then successfully argue that the limitations period runs from that delayed date of accrual.[24] As discussed above, limitations periods typically (though not always) do begin to run when a claim accrues, and this is true for a § 1983 claim. *See, e.g.*, *McDonough*, 139 S. Ct. at 2155 ("presumptively" equating the time the limitations period becomes to run with the time of accrual, i.e., "'when the plaintiff has "a complete and present cause of action,"'" (quoting *Wallace*, 549 U.S. at 388);[25] *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021) (equating the date on which the plaintiff's claim "'accrued' [with the date that] started the one-year clock" on the applicable limitations period)). In other words, although the date on which a claim "accrues" is not necessarily the date on which the limitations period begins to run, the Court is satisfied that per the "presumptive" rule, the limitations period for a Section 1983 claim does in fact begin to run when the claim "accrued" in the sense of becoming a complete and present cause of action.

---

[24] "It should be clear . . . that *Heck* can be deployed both *defensively* and *offensively*; that tension has sometimes produced inconsistency in application. The *Heck* bar is normally raised defensively to win dismissal of a § 1983 claim when the plaintiff's conviction has not been overturned; if the bar applies, the plaintiff's claim must be dismissed as premature. In contrast, *Heck*'s rule of deferred accrual is raised *offensively* to overcome a statute-of-limitations defense." *Johnson v. Winstead*, 900 F.3d 428, 436 (7th Cir. 2018).

[25] As discussed below, neither *Wallace* nor *McDonough* actually involved *Heck*-contemplated claims. But the Court sees no reason why their equation of the time of accrual with the time the limitation period begins to run would not apply equally to *Heck*-contemplated claims.

As suggested above, *Heck's* accrual rule *can* operate to delay (i.e., "defer") accrual of a *Heck*-contemplated *claim* beyond when accrual otherwise would have occurred. Specifically, under *Heck*, even if accrual of the claim would have occurred at a particular time under the generally applicable accrual rule (such as a "discovery' rule), accrual nevertheless does not occur at that time if a conviction or sentence underlying the plaintiff's harms is still valid at that time. Under these circumstances (but only under these circumstances), application of *Heck's* accrual rule results in deferred accrual. *See Wallace*, 549 U.S. at 393 ("[T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated." (internal quotation marks omitted)).[26] On the other hand, *Heck* effects no deferral of the time of accrual if, by the time accrual occurs under the generally applicable rule of accrual, any conviction or sentence called into question by the plaintiff's claims has already been invalidated; if for whatever reason accrual under the generally applicable occurs *after* such invalidation, *Heck* does *not* operate to defer the accrual date; rather, the operative accrual date is the later accrual date provided by otherwise applicable law. So although *Heck* is sometimes referred to as providing a *deferred-accrual* rule, *Heck's* accrual rule merely holds out the *possibility* of deferred accrual, which may or may not be realized in any particular case depending on when invalidation of relevant conviction(s) or sentence(s) occur(s) vis-à-vis the otherwise applicable accrual date.

In short, *Heck's* accrual rule was announced primarily as a way of barring a plaintiff's *Heck*-contemplated claim until invalidation of the relevant conviction(s) or sentence(s), but on the

---

[26] The Sixth Circuit has explained that the purpose of *Heck's* accrual rule (derived from the favorable-termination requirement of common-law malicious prosecution claims) "is to prevent a collateral attack by a 'convicted criminal defendant' on the conviction itself," and that such purpose is "inapplicable to a case [as might be within the scope of *McDonough* but not *Heck*] where there is no conviction and the malicious prosecution claim itself is founded on the dearth of evidence substantiating the institution and continuation of proceedings in the first place." *Jones,* 959 F.3d at 764–65.

other hand it can be invoked by a plaintiff as a means of potentially extending the date of the beginning of the running (and thus the expiration of) of the limitations period on a *Heck*-contemplated claim. As a district court in this circuit cogently observed (initially by quoting the Tenth Circuit):[27]

> As the Tenth Circuit aptly explained:
>
>> Thus, for § 1983 claims necessarily challenging the validity of a conviction or sentence, *Heck* delays the rise of the cause of action until the conviction or sentence has been invalidated. Because the cause of action does not accrue until such time, the applicable statute of limitations does not begin to run until the same time." *Heck*, 512 U.S. at 489–90 ("Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. […] a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.").
>
> *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999)*; see also D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) ("*Heck* modified the general rule of accrual for § 1983 actions by delaying what would otherwise be the accrual date of a tort action until the setting aside of an *extant conviction* which success in that tort action would impugn. Under *Heck*, a cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever.") (cleaned up); *Johnson v. Winstead*, 900 F.3d 428, 436 (7th Cir. 2018) ("The *Heck* bar is normally raised defensively to win dismissal of a § 1983 claim when the plaintiff's conviction has not been overturned; if the bar applies, the plaintiff's claim must be dismissed as premature. In contrast, *Heck*'s rule of deferred accrual is raised offensively to overcome a statute-of-limitations defense."). *Heck* therefore vitiates an otherwise meritorious limitations defense.
>
> The Court must therefore determine whether *Heck* applies. If it does not, the accrual of [the plaintiff's § 1983] claim was immediate rather than deferred.

*Murray v. Jones*, No. 6:20-CV-00082-GFVT, 2022 WL 821662, at *6–7 (E.D. Ky. Mar. 17, 2022).

---

[27] The Court notes, however, that it disagrees with the quoted cases to the extent they imply that *Heck*'s accrual rule operates in *every* case to defer the accrual date beyond what it otherwise would have been.

**2. Under *Heck's* accrual rule, which presumptively applies to all of Plaintiff's claims, Plaintiff's claims would have accrued on December 10, 2020, when his convictions and sentences were invalidated via reversal on direct appeal.**

From the discussion above, it follows that *Heck* operates to ensure that *Heck*-contemplated claims accrue no earlier than the time the relevant conviction or sentence is invalidated, even if accrual otherwise would have occurred earlier, such as "immediate[ly]", *id.* at *7 upon the occurrence of the actions alleged to have violated § 1983. In a particular case, a plaintiff could decline to raise *Heck* "offensively" to overcome a statute-of-limitations defense and instead assert that accrual of *Heck*-contemplated claims occurs *after* the time indicated by *Heck* under otherwise applicable law (for example, some "discovery" rule of accrual). But Plaintiff here does no such thing; instead, he argues for a "straightforward application of the *Heck* rule," asserting that such application "establishes that Plaintiff's claims are timely."[28] (Doc. No. 20 at 5).[29]

But actually a "straightforward application of the *Heck* rule" here plainly works against Plaintiff. Applied "straightforward[ly]," *Heck* pegs the time of accrual far earlier than Plaintiff would like. In particular, *Heck* pegs it at the time of the invalidation of the convictions and sentences called into question by Plaintiff's claims, namely the time of their reversal on appeal: December 10, 2020.

However, contrary to the parties' suggestions, the instant Motion is actually *not* resolvable by a straightforward application of the *Heck*'s accrual rule. That is, *Heck* does not supply the accrual date here. The Court next explains why not.

---

[28] As to *why* the *Heck* rule establishes this, as discussed below Plaintiff claims that the date of accrual is the date of the Rutherford County Circuit Court's order of expungement, i.e., February 3, 2022. (Doc. No. 20 at 5). The Court rejects this claim, as also discussed below.

[29] Defendant likewise calls for an application of *Heck*'s accrual rule. (Doc. No. 21). As discussed below, although the parties believe that they are calling for application of *Heck*'s accrual rule, they actually are relying on something else, namely the rule of *McDonough*.

**3. Under *McDonough v. Smith*, which applies instead of *Heck* itself where (as here) a termination of the criminal prosecution follows a reversal of a judgment on appeal, the claim accrues at the time of the termination of the criminal prosecution in the plaintiff's favor.**

The Seventh Circuit has noted that when "*Heck* supplies the rule for accrual of the claim," the claim "could not accrue until 'the conviction or sentence ha[d] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Savory*, 947 F.3d 409 at 417 (quoting *Heck*, 512 U.S. at 487). Until such time, the "conviction was intact and [the petitioner] had no cause of action under section 1983." *Id.*

But the situation gets much more complicated when the event that triggers accrual (though sometimes referred to as "favorable termination," as noted in a footnote above) under *Heck*'s accrual rule does not in practical terms come close to terminating the charges. It is one thing for a reversal on direct appeal to mandate immediate and complete dismissal of the case, as sometimes occurs. But it is quite another thing for a reversal on direct appeal to mandate return to the trial court, where the case—far from being "favorably terminated" in favor of the accused—continues with the possibility of a (second) conviction thereafter upon retrial or guilty plea.

The latter situation is Plaintiff's case, inasmuch as the reversal of his conviction resulted not in immediate "favorable termination" of the charges against him, but rather in a "remand for a new trial." (Doc. No. 1-1 at 35). As the complaint states, Plaintiff's claims "arise[ ] from *Brady* and *Giglio* violations resulting in the wrongful conviction of Lawrence Allen [on charges of] aggravated rape and domestic assault," charges that "were later reversed by the Tennessee Court of Criminal Appeals (Opinion attached as [Doc. No. 1-1]) and expunged on February 8, 2022 (Expungement Order, attached as [Doc. No. 1-2]) (Doc. No. 1, ¶ 1-2). The favorable termination

actually occurred between the above-referenced reversal and expungement, namely on April 8, 2021:

> On April 8, 2021, at a motion hearing, the Rutherford County Circuit Court entered a finding of "Dismissal/Nolle Prosequi" for Plaintiff's Aggravated Rape and Domestic Assault Charges and entered a finding of "Guilty Plea-Lesser Charge" for Aggravated Assault." Plaintiff was sentenced to a term of three years to be served at thirty percent, timed served with no probation.

(Doc. No. 18 at 2).[30]

It seems odd to say that the limitations period should start running on a malicious prosecution-analogous claim immediately upon reversal on direct appeal if, as in Plaintiff's case, the case is remanded for a new trial on the charges that were subjected to the reversal. After all, *another* conviction on these same charges still could occur (at a new trial or by guilty plea.)[31] And such a conviction then might be considered grounds to declare any malicious prosecution-analogous claim premature unless and until this second conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. And yet *Heck* is rather unambiguous in stating that accrual (and thus the beginning of the running of the limitations period) occurs *when (and only when) the conviction(s) and sentence(s) are reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal*

---

[30] Regrettably, in asserting these facts via the language quoted here, Defendant failed to cite to anything in support. But these facts are reflected in the record. (Doc. No. 19-1 at 3-4). And Plaintiff does not appear to dispute them.

[31] So could, for that matter, a conviction by guilty plea on lesser charges arising out of the same case (as occurred in Plaintiff's case).

*court's issuance of a writ of habeas corpus.* The Court cannot agree[32] that the Supreme Court held in *Heck* that *"*Heck's post-conviction action under § 1983 for claims analogous to the tort of malicious prosecution (brought during the pendency of his state-court criminal appeal) would not accrue until *a final adjudication in Heck's favor in state court.*" *Eidson*, 510 F.3d at 638 (citing *Heck*, 512 U.S. at 480-87) (emphasis added).[33] If this is what the majority in *Heck* meant to say, it could have said this, but it did not; instead, it stated the different accrual rule stated in italics two sentences above.

And yet one may legitimately question whether, in cases like Plaintiff's, *Heck* should be applied as written or whether instead the applicable rule should be the one attributed (dubiously) to *Heck* by *Eidson*. Plaintiff's conviction was reversed on direct appeal, then remanded for retrial, whereafter the charges of conviction were ultimately resolved in his favor via dismissal nolle prosequi.[34] In that timeline, there is only one event on *Heck*'s list of potential accrual events: the reversal of his convictions and sentences on direct appeal. But could there actually be a *second* accrual event in cases like Plaintiff, a date tied to what happens on remand following reversal on direct appeal?

---

[32] The Court perceives this statement from *Eidson* to be dicta. Despite this disagreement with this *dicta,* the Court realizes that *Eidson* is binding precedent for the Court, which therefore must follow any pertinent *holding* of *Eidson*.

[33] True, *Heck* analogized Heck's Section 1983 claims to common-law claims of malicious prosecution and noted that common-law claims of malicious prosecution require "termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484. But *Heck* simply did not say that accrual did not occur until there was a "*final* adjudication in Heck's favor in state court." *Eidson*, 510 F.3d at 638 (emphasis added). Indeed, the word "final" appears nowhere in any of the opinions in *Heck*, and a variant of that word appears only once, i.e., in the majority opinion's reference to "concerns for finality and consistency [as being grounds for] declin[ing] to expand opportunities for collateral attack." *Heck*, 512 U.S. at 485.

[34] As noted above, those charges were effectively replaced by a lesser charge (aggravated assault) to which Plaintiff pled guilty. But since Plaintiff's claim is for damages resulting from the original charges (for aggravated rape and domestic assault), the Court focuses on what happened with *those* charges.

In *Johnson*, the Seventh Circuit answered this question in the affirmative, as the Seventh Circuit explained in *Savory* when it contrasted *Johnson* with *McDonough:* ⸻

> *McDonough* addressed claim accrual in the context of a trial resulting in mistrial, followed by retrial resulting in acquittal. *Johnson* addressed claim accrual in the context of a trial resulting in a conviction, followed by reversal on appeal, then retrial resulting in a second conviction, followed again by reversal on appeal. *McDonough* concluded that the claim accrued only at the resolution of the second trial. *Johnson* allowed for two accrual dates, one at favorable termination of the first trial (in the form of the appellate reversal) and the second at favorable termination of the second trial (again in the form of reversal on appeal). [The plaintiff] asks this court to resolve the seeming inconsistency by finding that there is only one accrual date in a single criminal case with a retrial.

*Savory*, 947 F.3d at 416 n.3. Invited by the plaintiff (Savory) in *Savory* to revisit *Johnson* on the grounds that (according to the plaintiff) "*McDonough* calls into question the continued validity of *Johnson*," *id.*, the Seventh Circuit declined to do so and instead suggested that the district court do the revisiting in the first instance on remand. *See id.* The district court subsequently did exactly that, opining that *McDonough* indeed abrogates *Johnson*'s "dual-accrual" rule because—as is even more to the point here—*McDonough* applies not only when there has been no conviction, but also when there has been a prior conviction reversed on appeal, followed by a continuation of the prosecution on remand:

> Savory's Fifth Amendment claim alleges that the officers coerced him "to incriminate himself involuntarily, falsely, and against his will," with the false confession "used against [him] to his detriment throughout his criminal case," in violation of his right to be free from compulsory self-incrimination. Doc. 1 at ¶¶ 89, 91. As Savory sees it, the claim is timely because it was filed within two years of his pardon. Doc. 137 at 15-16. As Defendants see it, the claim is timely only as to the injuries caused by the convictions entered at the second trial, Doc. 149 at 4 n.4, not as to the injuries caused by the convictions at the first trial. The reason, Defendants assert, is that the claim accrued for purposes of the convictions entered at the first trial in April 1980, when the state appellate court reversed those convictions. Doc. 128 at 12-13.

> Defendants' position faithfully applies *Johnson v. Winstead*. The plaintiff in *Johnson* brought a Fifth Amendment coerced confession claim based on the use of his incriminating statements at two trials—both of which ended in convictions

that were reversed on appeal. 900 F.3d at 439. The Seventh Circuit held that the claim had two accrual dates, one at the favorable termination[35] (appellate reversal) of the first conviction, and the second at the favorable termination (another appellate reversal) of the second conviction. *Ibid.* Thus, under *Johnson*, Savory's Fifth Amendment claim must be split in two, with the first part (the one arising from the conviction at his first trial) accruing in April 1980 and thus time-barred.

As the Seventh Circuit noted, the question here is whether *McDonough v. Smith* overruled *Johnson* in this respect. It did. *McDonough* held that *Heck* barred a plaintiff whose first trial ended in a mistrial, and who was then retried and acquitted, from bringing a fabricated evidence claim until "the underlying criminal proceedings ha[d] resolved in [his] favor," meaning until his acquittal—which in turn means that the claim did not accrue until that time. 139 S. Ct. at 2156. To support its holding, the Supreme Court invoked "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2157. The Court explained that the contrary result would impose upon "[a] significant number of criminal defendants . . . an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them," adding that "the parallel civil litigation that would result if plaintiffs chose the second option would run counter to core principles of federalism, comity, consistency, and judicial economy." *Id.* at 2158.

The dual-accrual rule of *Johnson* cannot be reconciled with the Supreme Court's analysis in *McDonough*, at least under the circumstances of this case. Because the State elected to re-try him after the state appellate court's April 1980 reversal of the convictions entered at his first trial, Savory remained fully subject to pending criminal charges. Those are precisely the circumstances in which, according to *McDonough*, a § 1983 claim has not yet accrued—circumstances where, if the claim had accrued in April 1980, Savory would have been compelled to bring parallel civil litigation involving the facts of his criminal case against the very persons who were the moving force behind his continued prosecution, and where there would have been a risk of conflicting judgments if Savory prevailed in the civil case and the State prevailed in the criminal case. After all, if Savory in a civil case proved by a preponderance of the evidence that the officers violated the Fifth Amendment by coercing him to "falsely" confess to the murders, Doc. 1 at ¶ 89, then he could not have been found guilty in his criminal case, certainly not beyond a reasonable doubt, of committing the same murders. See *McDonough*, 139 S. Ct. at 2156 (holding that a claim "challeng[ing] the integrity of [the] criminal prosecution[ ]" cannot accrue until the prosecution terminates in the defendant's favor); *id.* at 2159 (same for a claim that "directly challenges—and thus necessarily threatens to impugn—the prosecution itself"). It follows that Savory's Fifth

---

[35] The court here should have used the term "invalidation" rather than "favorable termination," because (i) *Heck* used the term "invalidation; and (ii) where the term "favorable termination" is appropriately used, it refers to favorable termination of charges as a whole, not to mere termination of a *conviction*, which portends a possible continuation of the prosecution of the charges.

> Amendment coerced confession claim accrued only once, when he received his pardon, because only then did the criminal proceedings fully resolve in his favor.
>
> In sum, Savory's Fifth Amendment coerced confession claim is timely in its entirety, having been filed within two years of his pardon that, after nearly four decades, terminated the criminal proceedings in his favor.

*Savory v. Cannon* [*Savory II*], 532 F. Supp. 3d 628, 634–35 (N.D. Ill. 2021) (footnote added). The key points to highlight here are twofold. First, "[b]ecause the State elected to re-try [the plaintiff] after the state appellate court's [ ] reversal of the convictions entered at his first trial, [the plaintiff] remained fully subject to pending criminal charges. Those are precisely the circumstances in which, according to *McDonough*, a § 1983 claim has not yet accrued." *Id.* at 635. In other words, although *Heck* states clearly and unqualifiedly that a § 1983 claim (if malicious-prosecution-analogous) based on harm from a conviction or sentence accrues at the time of reversal upon direct appeal, *McDonough* makes clear that this is *not* the case when the state elects to seek to retry the plaintiff after remand from the state appellate court. Second, "*McDonough* makes clear that a plaintiff must wait until the favorable termination of the criminal proceedings to bring a § 1983 claim that, if successful, would be incompatible with his guilt." *Id.* at 636.[36]

---

[36] Plaintiff's claims appear incompatible with his guilt, and neither he nor Defendants appear to disagree on that point. This view is supported by cases factually analogous to the present one, like *Savory*, in which the Seventh Circuit reasoned (in the context of addressing whether to apply *Heck*, which like *McDonough*, applies when there is incompatibility (irreconcilability) between a Section 1983 claim and the defendant's guilty):

> . . . [W]e first look at the nature of [the plaintiff's] section 1983 claims and conclude that, like *Heck*'s claims, they strongly resemble the common-law tort of malicious prosecution. [The plaintiff's] claims largely echo *Heck*'s complaint, asserting the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction. There is no logical way to reconcile those claims with a valid conviction. Therefore, *Heck* supplies the rule for accrual of the claim.

947 F.3d at 417.

Although the Seventh Circuit still has not addressed the issue, numerous other judges (from that same district court and from other district courts) have cited *Savory II* with approval. *E.g., Wilson v. Est. of Burge*, No. 21-CV-03487, 2023 WL 2750946, at *15 (N.D. Ill. Mar. 31, 2023) (citing *Savory II* in finding that *Johnson's* dual-accrual rule did not survive *McDonough* and that "under *McDonough*, a Section 1983 plaintiff can bring claims only when the criminal proceedings have terminated for good"); *Dukes v. Washburn*, 600 F. Supp. 3d 885, 896 (N.D. Ill. 2022) ("This Court agrees with the above cases [including *Savory II*] which have found *Johnson*'s dual-accrual doctrine inconsistent with *McDonough*, and thus concludes that only one accrual date—the date of [the p]laintiff's acquittal [on retrial upon remand after reversal of the plaintiff's conviction at trial]—applies.").

The Court finds persuasive the reasoning of *Savory II* and these other cases, and it adopts the substance of the rule they adopted: when a Section 1983 plaintiff brings a malicious-prosecution-analogous claim that would be incompatible with his or her guilt on particular charges, those claims do not accrue until the favorable *termination* of the criminal proceedings on those charges—even if there had been a reversal of convictions or sentences on those charges (and thus "invalidation" of such conviction (s) or sentence(s) within the meaning of *Heck*) *prior* to such favorable termination.[37] This rule makes a distinction between a favorable *termination* and an earlier favorable *interim result* (i.e., reversal and remand for retrial). It seems clear that this rule is

---

[37] Take, for example, the Supreme Court's statement that "[o]nly once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*, see 512 U.S. at 486–487, 114 S. Ct. 2364, will the statute of limitations begin to run." *McDonough*, 139 S. Ct. at 2158. This statement posits an alternative to *Heck*'s accrual rule, whereby the accrual occurs "[o]nly once the criminal proceeding has ended in the defendant's favor"—which, as *McDonough* unmistakably suggests in presenting this as an alternative, could mean a time other than the time of any of the specific events of "invalidation" mentioned in *Heck*.

properly considered to be derived from *McDonough* and *not* from *Heck* itself,[38] which expressly contemplated accrual at the earlier time (of reversal) and not at the later time (of favorable termination).[39] What *McDonough* teaches is that despite what *Heck* actually states, accrual does *not* occur at the time of reversal on direct appeal when (as is so often, though not always the case) remand to the trial court portends continuing prosecution of the defendant.

This only stands to reason, as it would be strange for the law to suggest that under those circumstances, the time is right (and the clock is ticking) for the defendant to bring civil claims. "[A] defendant who remains fully subject to criminal charges is not in an appropriate position to bring claims against the state." *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1152 (N.D. Ill. 2022) (citing *Savory II*). *Accord*, *Dukes*, 600 F. Supp. 3d at 894–95 (N.D. Ill. 2022) ("If the rule were, as Defendants suggest, that Plaintiff had to file his fabrication claims within two years of the appellate court's reversal, he would have been placed in the untenable position of mounting a civil action challenging criminal proceedings while he faced re-trial for murder charges in those same proceedings. This is the very situation *McDonough* cautioned against.").

---

[38] The Court believes that this is the proper characterization, even though *McDonough* itself did not actually involve any convictions or sentences, *Savory*, 947 F.3d at 416 n.3, and even though *McDonough* can be considered as part of *Heck*'s progeny. *Savory*, 947 F.3d at 419. It may be fair to say "[t]he *Heck* bar accounts for the preclusive effect of state court criminal judgments on civil litigation by lifting the bar only when the plaintiff has achieved a favorable termination of the criminal proceeding[,]" *id.,* but it is actually *McDonough,* and not *Heck* itself, that makes clear that this is how the *Heck* bar operates. The undersigned is aware that the Sixth Circuit has stated, in dicta, that *Heck* "explain[ed] why § 1983 malicious prosecution claims must also include a demonstration that the prior criminal proceeding terminated in favor of the accused." *Jones*, 959 F.3d at 764. The Court respectfully disagrees, believing firmly that what *Heck* explained was why common-law malicious prosecution claims required favorable termination of prior criminal proceedings), whereafter *Heck* prescribed a somewhat different and more specific requirement—*invalidation of an extant conviction or sentence*—for *malicious-prosecution-analogous claims*.

[39] At the risk of repeating itself, the Court notes that *Heck* referred to the "favorable termination" accrual rule applicable to common-law claims of malicious prosecution, but it did *not* phrase the accrual rule for malicious-prosecution-analogous claims in terms of "favorable termination."

Another way to put it is to say that an actual or potential *Heck*-contemplated claim (i.e., a claim that implicates a still-valid conviction) becomes a *McDonough*-contemplated claim (a claim that implicates no conviction or sentence) when a sentence or conviction is reversed and remanded for a new trial. And when that happens (as it did in Plaintiff's case on December 10, 2020), *Heck*'s accrual rule no longer applies, and instead *McDonough*'s alternative accrual rule applies.

Like the Court, and consistent with *McDonough*, Plaintiff asserts that his claims accrued, and the limitations period began running, at the time of favorable termination. Defendants are ambivalent on this question, seeming to be all over the place. On the one hand, they cite *D'Ambrosio* (or, as they incorrectly call it, "*D'Ambriso*") for the proposition that "'[t]he claim accrues as soon as the only obstacle to the litigation—the adverse judgment—has been lifted.'" (Doc. No. 18 at 6 (citing *D'Ambrosio*, 747 F.3d at 384)). To the same effect, they cite *D'Ambrosio* also for the proposition that for *Heck*-contemplated claims, "a cause of action under § 1983 . . . does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever." (*Id.* at 5 (citing *D'Ambrosio*, 747 F.3d at 384)). *D'Ambrosio*, decided before *McDonough*, thus identifies the time of accrual in a case like Plaintiff's as the time of reversal, and not the (often different) time of favorable termination. On the other hand, Defendants cite *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) for the (very different) proposition that (in that particular case at least) the limitations period applicable to a § 1983 claim "*did not begin to run until dismissal of the criminal charges.*" (*Id.* at 6). And they suggest that the applicable rule of accrual is indicated by *King v. Hardwood*, 852 F.3d 568 (6th Cir. 2017), and *Jordan v. Blount County*, 885 F.3d 413 (6th Cir. 2018)—each of which indicates that the limitations period on a malicious-prosecution-analogous claim based on harm from a

reversed-and-remanded conviction or sentence begins running only later, i.e., if and when the charges of conviction are terminated in the plaintiff's favor.

*King* states that "under *Heck*, a malicious-prosecution claim is not available before the favorable termination of criminal proceedings, nor does the limitations period for such a claim begin until the favorable termination of criminal proceedings." *King*, 852 F.3d at 579. Although the Court does not view this rule as derived from *Heck*, the rule was prescribed (after *King*) in *McDonough*, and it remains binding precedent. In *King*, the plaintiff filed a complaint alleging malicious prosecution under § 1983 against several law enforcement officials employed by the Kentucky State Police. *See King*, 852 F.3d at 572. In the criminal case on which the malicious prosecution claim was based, the plaintiff had been indicted for murder and tampering with physical evidence. *See id.* at 575. The plaintiff then entered an *Alford* plea, i.e., pled guilty while still maintaining her innocence. *See id*. After the plaintiff entered the plea, a serial murderer confessed to the murder for which the plaintiff had been prosecuted. *See id.* at 576. In light of the new evidence, the Kentucky Innocence Project filed a motion for a new trial. *See id.* The state trial court (Spencer Circuit Court) denied the motion, but the Kentucky Court of Appeals reversed the circuit court's order, vacated the plaintiff's *Alford* plea, and remanded the case for a new trial on the previously indicted offenses. *See id.* On remand, the trial court dismissed the charges of murder and tampering with physical evidence that had been pending against the plaintiff. *See id.*

On appeal from summary judgment in the § 1983 action, the Sixth Circuit found that the district court had used the incorrect standard for determining whether the plaintiff's malicious prosecution claim was untimely. *See id.* at 579. The district court had found that the plaintiff's cause of action for malicious prosecution had accrued, and therefore the limitations period had begun to run, when the Kentucky Court of Appeals reversed the plaintiff's conviction and

remanded the case for a new trial. *See id.* The Sixth Circuit disagreed, holding that the plaintiff's

malicious-prosecution claim did not accrue until the termination of the criminal prosecution in the

plaintiff's favor.[40] *Id.* at 578. And as to when such favorable termination occurred, the Sixth Circuit

held that it was at the time of dismissal of the indictment against the plaintiff on remand from the

Kentucky Court of Appeals. *See id* at 579*.* The Sixth Circuit explained that the "termination of the

. . . criminal proceeding" did not occur until the indictment was dismissed, because the Kentucky

Court of Appeals had remanded the case "for trial on the same charges that formed part of the

malicious prosecution for which [the plaintiff] now seeks relief." *Id.* Therefore, in the Sixth

Circuit's view, the criminal proceedings had *not* terminated upon reversal of the conviction, but

instead terminated when the indictment was dismissed on remand.

　　Approximately a year later (and still prior to *McDonough*), in *Jordan* the Sixth Circuit was

presented with a set of facts similar to those at issue in *King*. In *Jordan*, the plaintiff brought a

malicious-prosecution analogous claim for "prosecutorial misconduct that led to his wrongful

conviction for second-degree murder." *Jordan*, 885 F.3d at 414. In the criminal case on which the

plaintiff's § 1983 claims were based, the prosecution had withheld evidence that should have been

disclosed under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The plaintiff then sought post-

---

[40] More precisely, the Sixth Circuit held that the limitations period did not begin running "'until the plaintiff knows or has reason to know of' such favorable termination." *King,* 852 F.3d at 578 (quoting *Eidson*, 510 F.3d at 635). To the extent that *King* and *Eidson*—by positing *a plaintiff's-knowledge-of-favorable termination* requirement—suggest a rule different from *McDonough* (which appears to contain no such requirement), they perhaps were overruled by the later-decided *McDonough.* In any event, in the present case it is immaterial whether such a requirement exists, because there is no question that Plaintiff would have gained knowledge of the favorable termination at the time the favorable termination occurred (on April 8, 2021, when he pled guilty to lesser charges contemporaneously with having his charges of conviction dismissed).

　　One wonders how serious the court in *King* was about the knowledge requirement. After all, after stating the requirement, the court stated the accrual rule without any reference to such a requirement: "a malicious-prosecution[-analogous] claim is not available before the favorable termination of criminal proceedings." *Id.* at 579.

conviction relief, which led the Tennessee Court of Appeals to vacate the plaintiff's conviction and remand the case for further proceedings. *See Jordan*, 885 F.3d at 414–15. On remand, the plaintiff was retried and acquitted. *Id.*

On appeal from the district court's dismissal of the complaint, the Sixth Circuit faced an issue similar to the one involved in *King*, namely "whether, as the district court held, [the plaintiff's] claim accrued when his conviction was vacated [and therefore the statute of limitations began running at this time], or whether instead it accrued upon his later acquittal [and therefore the statute of limitations began running at this later time]." *Id.* at 415. Consistent with its resolution in *King*, the Sixth Circuit explained that the plaintiff's "criminal proceeding likewise continued after the vacatur of his conviction, and ended only upon his acquittal in March 2015. Hence his claim did not accrue until then." *Id.* Treating the accrual date as the date on which the limitations period began running, the Sixth Circuit found that the claims were timely, as they were filed within one year of the plaintiff's acquittal. *Id.*

*King* and *Jordan* are consistent with the later-decided *McDonough*, and they involve facts materially similar to those in the present case. Just as Plaintiff's state-court conviction was reversed and remanded for a new trial, so too were state-court criminal convictions of the plaintiffs in *King* and *Jordan*. Furthermore, like the charges against the plaintiff in *King* upon remand from the Kentucky Court of Appeals, the charges against Plaintiff in this case were dismissed upon remand for a new trial.[41] As highlighted by the Sixth Circuit in *King*, the Kentucky Court of Appeals had remanded the case for "trial on the same charges that formed part of the malicious prosecution" claim brought by the plaintiff in the civil action. *King*, 852 F.3d at 579. The same is true regarding

---

[41] Although the charges were not dismissed against the plaintiff in *Jordan* upon remand—and instead, the plaintiff was retried and acquitted—the Sixth Circuit's reliance on its analysis in *King* in support of its finding in *Jordan* indicates to the Court that this distinction is not material.

the remand issued by the Tennessee Court of Appeals in this case—in other words, Plaintiff faced retrial for the same charges that form the basis of his § 1983 claims.

Ultimately, despite Defendants' ostensible ambiguity on this issue, the Court and the parties are all in agreement that the limitations period on Plaintiff's claims began running at the time of favorable termination of the charges (of aggravated rape and domestic assault) for which Plaintiff was convicted before obtaining a reversal. The two sides do not get to that result in the manner as did the Court; for example, Defendants in one place refer to this result as an application of "the rule of *Heck*," whereas the Court concludes that the result is an application of the rule of *McDonough*, a case Defendants never even cite.[42] But in any event, the Court above has taken pains to assure itself that the date at issue is the date of favorable termination—and not the (earlier) time of "invalidation" within the meaning of *Heck*, i.e., the time of reversal of his convictions on direct appeal, December 10, 2020.

### 4. Favorable termination occurred, so as to start the running of the limitations period on Plaintiff's claims, upon dismissal of the charges against Plaintiff that caused the alleged harm for which he seeks to recover damages.

As noted above, the favorable termination here at issue is the favorable termination of the charges of aggravated rape and domestic assault in particular. The next question is when that favorable termination occurred, as this is the time of accrual for all of Plaintiff's claims, each of which is a malicious-prosecution-analogous claim subject to the rule of *McDonough* rather than *Heck*'s accrual rule.[43]

---

[42] To his credit, Plaintiff comes much closer to stating that the applicable rule here is the rule of *McDonough* rather than the *Heck*'s accrual rule *per se*, but he does not state this with crystal clarity. (Doc. No. 20 at 13).

[43] As noted above, Plaintiff brings four claims under § 1983, namely, a malicious-prosecution claim, two *Brady* claims, and a claim against the Town of Smyrna based on a failure to train as to *Brady* obligations. All of Plaintiff's § 1983 claims are malicious-prosecution-analogous claims, because each one seeks "damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484. It is obviously true

Consistent with *Jordan* and *King*, the Court finds that such termination occurred on April 8, 2021, upon the dismissal of the charges on which Plaintiff had previously been convicted.[44] *King* in particular clearly dictates this result. And this result is supported by persuasive authority from district courts in the Seventh Circuit, where this issue seems especially common. *See*, e.g., *Ochoa v. Lopez*, 2021 WL 4439426, at *6 (N.D. Ill. Sept. 28, 2021) ("The Court finds that Ochoa's Section 1983 compelled self-incrimination claim, which necessarily implicated the validity of his conviction, did not begin to accrue until October 23, 2019, when the State of Illinois dismissed all charges against him [on remand after the state appellate court reversed his conviction at trial]"); *Jackson v. City of Chicago*, 2021 WL 3883111, at *4 (N.D. Ill. Aug. 31, 2021) (holding that the plaintiff's Section 1983 claims did not accrue until the state's attorney gave formal notice that it would not prosecute the plaintiff after he had been granted a new trial after conviction at trial). *Jackson*'s cogent remarks are equally applicable here, despite the manner different that *Jackson*

---

that a malicious-prosecution claim under § 1983 is a malicious-prosecution analogous claim, and the Sixth Circuit treats *Brady* claims as malicious-prosecution analogous. *See Jordan*, 885 F.3d at 415.

And as for the failure-to-train claim, "[t]he law is clear that *Heck* operates to protect employers sued for failure to train or supervise as well as liability for the wrongful acts of their agents." *Walter v. Horseshoe Ent.*, 483 F. App'x 884, 887, n.4 (5th Cir. 2012) (citing *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir.2008)). *See also*, *e.g.*, *Lasko v. Leechburg Police Dep't*, No. CIV.A. 12-1421, 2013 WL 2404145, at *8 (W.D. Pa. May 31, 2013) ("Because the 'failure to train' claims are in this regard inexorably intertwined with the core Fourth and Fourteenth Amendment claims remaining as to [two of the defendants], they to[o] are governed by the same statute of limitations analysis and application [prescribed by *Heck*]."). The Court sees no basis to come to do a different result where, as here, the applicable rule is not *Heck*'s accrual rule but the rule of *McDonough*.

In short, *Brady/Giglio* claims are malicious-prosecution-analogous claims, such that their accrual is governed by *Heck* (or alternatively, as in the present case, by *McDonough*). According to the cases just cited, this means that claims premised on failure to train on *Brady/Giglio* obligations likewise are malicious-prosecution-analogous; this conclusion seems debatable, but the Court need not reach this issue given that the parties do not dispute that the accrual of Plaintiff's failure-to-train claim is governed by *Heck* or *McDonough*, as opposed to cases (like *Wallace*) that apply to Section 1983 claims that are not malicious-prosecution-analogous.

[44] As noted, on that same date, Plaintiff pled guilty to lesser charges, but those charges are not relevant here.

involved the grant of a new trial and Plaintiff's case involves reversal on appeal: "In the Court's view, prevailing on a motion for a new trial does not complete the story. Jackson was still subject to pending charges; the case against him was not conclusively terminated. Accordingly, Jackson's claim did not accrue until the entry of the *nolle prosequi* disposition, at which time the criminal proceedings were *fully* terminated."[45] *Id.*

The Court is thus satisfied that on April 8, 2021, Plaintiff's § 1983 claims accrued and the limitations period accordingly began running. The limitations period therefore expired on April 8, 2022. Plaintiff did not file this action until February 7, 2023, and therefore the action is untimely.

### 5. The date of the expungement of the charges against Plaintiff is not relevant to the statute-of-limitations inquiry.

Seeking a later accrual date, Plaintiff invokes *Carr v. Louisville-Jefferson County*, 37 F.4th 389, 393 (6th Cir. 2022), to argue that his § 1983 claims accrued upon expungement of the charges against him. (Doc. No. 20 at 5). In *Carr*, the plaintiff entered an *Alford* plea to second degree manslaughter in Kentucky state court. *Id.* at 391. The then-Kentucky Governor pardoned the plaintiff. *Id.* The plaintiff then filed several § 1983 claims against state officials involved in the state-court criminal proceedings. *Id.* The question for the Sixth Circuit was whether the executive pardon constituted an "expunge[ment] by executive order" under *Heck*, such as to have the effect of terminating the criminal proceedings against the plaintiff in state court. *Id.* at 393. As the Sixth Circuit explained, many states do not have "expunge[ment] by executive order" per se but instead allow an individual who has received an executive pardon to then petition a court to receive judicial expungement. *Id.* Given that there appeared to be no material distinction between an executive

---

[45] *Jackson* involved the vacatur of a conviction at trial due to the trial court's granting a new trial and vacating a conviction, rather than an appellate court's reversal of a conviction. This distinction, however, seems immaterial for purposes of determining when the applicable criminal proceedings are deemed terminated.

pardon that could be followed by a judicial expungement and an "expunge[ment] by executive order," the Sixth Circuit found the former to be encompassed by the latter. *See id.* It therefore followed that the executive pardon received by the plaintiff was sufficient to terminate the criminal proceedings against her under *Heck*. *See id.*

But *Carr* is factually inapplicable. In that case, there was no event prior to the pardon that even arguably could have served as "favorable termination" (or, for that matter, "invalidation" under *Heck*). Instead, the plaintiff was convicted, sentenced, paroled, and discharged in sequence. *See id*. at 391. And the pardon was the next relevant thing that happened. *See id.* In Plaintiff's case, by contrast, there was a reversal on appeal, and then a dismissal of the relevant charges. As noted above, the dismissal effected a favorable termination for purposes of *McDonough.* So even assuming *arguendo* that the expungement of the charges qualifies as an act of favorable termination for purposes of *McDonough*, it would be a *second* (subsequent) act of favorable termination. So Plaintiff in effect asks this Court to hold that when an act of favorable termination comes after a previous act of favorable termination, the later act essentially supersedes the previous act for purposes of accrual analysis—thus restarting the metaphorical limitations clock.

But Plaintiff provides no legal authority for such a holding, and the Court is aware of none. The best he can muster is a strained characterization of what happened after dismissal of the charges: "Plaintiff's 'state challenge' of expungement was still 'being pursued' even after he obtained the dismissal of the charges against him in April 2021. That is, Plaintiff was still pursuing expungement and succeeded in obtaining it in February 2022, within the limitations period as Defendants seek to define it." (Doc. No. 20 at 6). But even if this characterization were fair, it is irrelevant. Whatever was going on in February 2022, however described, does not change the fact

that favorable termination occurred in April 2021, and so the operative accrual occurred in April 2021.

The Court therefore rejects Plaintiff's argument that his § 1983 claims accrued upon the expungement of charges against him.

### 6. The Sixth Circuit's decision in *Ohnemus v. Thompson* does not operate to prevent the accrual of Plaintiff's malicious prosecution claim on April 8, 2021.

In 2014, the Sixth Circuit decided *Ohnemus v. Thompson*, 594 F. App'x 864 (6th Cir. 2014), wherein it held that the "favorable termination" element of a malicious prosecution claim under Kentucky law can be fulfilled only when the criminal proceedings on which the claim is based were terminated on the "merits of the accused's professed innocence." *See id.* at 867. Because the termination of the criminal proceedings against the plaintiff in that case was a result of a "settlement or compromise," the termination did not constitute "favorable termination" sufficient to satisfy this element of the plaintiff's malicious prosecution claim. *See id*.

Assuming for the moment that the Sixth Circuit's decision in *Ohnemus* is applicable to Section 1983 claims (and not just malicious-prosecution claims under Kentucky law), it was contradicted by the Supreme Court in *Thompson v. Clark*, 142 S. Ct. 1332 (2022). *See Caskey v. Fenton,* No. 22-3100, 2022 WL 16964963, at *10 (6th Cir. Nov. 16, 2022) ("*Thompson* contradicts this court's approach, though nonprecedential, that existed at the time of [the plaintiff's] case" under *Ohnemus*). The Supreme Court in *Thompson* held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson*, 142 S. Ct. at 1341. Assuming for the moment that (as Plaintiff suggests) *Ohnemus* indeed applies to claims under Section 1983, the Supreme Court's decision in *Thompson* is in significant tension with (if not directly contrary to) *Ohnemus*. Notably, *Thompson* was not decided until approximately a year

after Plaintiff entered his guilty plea and the remaining charges were dismissed, and so *Thompson* (unlike *Ohnemus*) was unavailable for Plaintiff to take into account until after the expiration of the one-year limitations period on April 8, 2022.

Plaintiff argues that because the April 8, 2021 termination of the criminal proceedings against Plaintiff was a result of a "settlement or compromise," the criminal proceedings had not been *favorably* terminated so as to trigger the accrual of Plaintiff's § 1983 claims. (Doc. No. 20 at 7). Plaintiff's argument, however, confuses two distinct concepts. The "favorable termination" at issue in *Ohnemus* was the "favorable termination" *element* of a state-law malicious-prosecution claim, not *McDonough*'s "favorable termination" that triggers accrual of conviction-impugning Section 1983 claims. The Sixth Circuit's reasoning in *Ohnemus* as to what is required to fulfill the "favorable termination" element of a state-law malicious prosecution claim was based specifically on case law from Kentucky state courts. *See Ohnemus*, 594 F. App'x at 867 ("Only where dismissal indicates that the accused may be innocent of the charges, have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim." (citing Kentucky cases)).

Indeed, the Sixth Circuit in *Ohnemus* had no occasion to comment on what "favorable termination" means with respect to accrual of Section 1983 claims, because the malicious-prosecution claim at issue in *Ohnemus* was a state-law claim governed by Kentucky law rather than a Section 1983 claim governed (with respect to the issue of accrual) by federal law. In short, *Ohnemus* does not relate to issues of accrual at all, let alone issues of accrual under federal law. However, some Sixth Circuit cases (including at least two in the post-*McDonough* era) for whatever reason have treated *Ohnemus* as applicable to the question of what constitutes "favorable

termination" for purposes of accrual of a Section 1983 claim.[46] However, one post-*McDonough* case, *Jones v. Clark Cnty*, 959 F.3d 748 (6th Cir. 2020), *abrogated by Thompson v. Clark*, 596 U.S. 36 (2022), in no way suggests that *Ohnemus* would have categorically dictated that the dismissal of the charges of conviction for Plaintiff would not have constituted "favorable termination"; to the contrary, it refused to "[c]ategorically constru[e] the favorable termination requirement to exclude plaintiffs whose cases were dismissed without prejudice"[47] and cited *Ohnemus* to the effect that accrual of a Section 1983 claim requires only either that his dismissal indicates that he *may* be innocent of the charges, or that or that a conviction has become "improbable." *Id.* at 765. Plaintiff does mention *Jones* (albeit not until several pages after citing and placing reliance on *Ohnemus)*,[48] and here is what he has to say about it:

> Simply put, if Plaintiff had attempted to bring this suit on April 9, 2021, the day after his charges were dismissed pursuant to a compromise with the prosecution, his claims would have failed under Sixth Circuit law in effect at that time. The Sixth Circuit's ruling in *Jones v. Clark Cnty., Kentucky* was still the law of the circuit. 959 F.3d 748, 763–64 (C.A.6 (Ky.), 2020), citing *Onhemus* [sic] *v. Thompson*, 594 Fed. Appx. 864, 867 ("Jones must still demonstrate that his 'dismissal indicates that [he] may be innocent of the charges.")

(Doc. No. 20 at 10).

---

[46] *Jones* in places seems to cite *Ohnemus* with respect specifically to what constitutes "favorable termination" for purposes of a malicious-prosecution claim under Kentucky *law.* In context, however, *Jones* suggests that its treatment of *Ohnemus* applies likewise to its discussion of the favorable-termination element of a § 1983 malicious prosecution action." 959 F.3d at 764.

[47] This refusal would naturally apply, even more strongly, to any dismissal *with* prejudice. But in any event, there is good reason to believe that dismissal of the charges against Plaintiff *nolle prosequi* was without prejudice. *See State v. Ruff*, No. W1999-01536CCAR3CD, 2001 WL 58732, at *3 (Tenn. Crim. App. Jan. 19, 2001) ("Because the *nolle prosequi* was a dismissal without a conviction or acquittal and because retrial was not barred by the Double Jeopardy Clause, we conclude that the charges against the Defendant were properly dismissed without prejudice.").

[48] "It is well-established law in this circuit that unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). So, *Ohnemus* was not precedential. *Jones*, decided six years after *Ohnemus*, was precedential, and it is unclear why Plaintiff did not lead off with the precedential, substantially newer case. But in any event, *Jones* does not indicate that the April 8, 2021 dismissal of Plaintiff's charges of conviction clearly did not constitute favorable termination.

Plaintiff has explained neither why his dismissal would not indicate that he "may" be innocent of the charges underlying his claims nor why his conviction had not become "improbable"; after all, prosecutors might dismiss more serious charges in return for a plea to lesser charges precisely because a conviction on the dismissed charges had become improbable, perhaps because the charged individual is innocent in that the evidence shows the absence of one or more elements of the more serious charges. And in the instant case, the suppression of evidence mandated by the Tennessee Court of Criminal Appeals likely would have substantially reduced the probability of his conviction on those charges at retrial.

In summary, *Ohnemus* was not precedential and, with all due respect to courts that have indicated otherwise, is inapplicable to the question of accrual of a Section 1983 claim. And in any event, *Ohnemus* did not automatically preclude a finding of favorable termination based on dismissal of the charges of conviction in Plaintiff's case; as noted, in 2020 in *Jones*, a dismissal (even one without prejudice, i.e., where the prosecution generally retains the prerogative to re-initiated the prosecution) potentially could constitute favorable termination in a particular case—perhaps including Plaintiff's, as far as the undersigned can tell. For these reasons, the Court is unpersuaded that either *Ohnemus* or *Jones* affected the date on which the criminal proceedings against Plaintiff terminated in his favor. The Court therefore finds that these decisions do not serve to prevent the accrual of Plaintiff's § 1983 malicious-prosecution claim on April 8, 2021.

**7. Equitable tolling is not appropriate in this case.**

Finally, Plaintiff argues that if the Court finds his claims otherwise untimely, it should equitably toll[49] the limitations period so as to effectively make them timely. (Doc. No. 20 at 11).

_____

[49] It is worth recalling the undersigned's observations from a quarter century ago:

As this Court has explained, whether the limitations period should be tolled is typically a matter of state law. *See Pike v. U.S.*, 868 F. Supp. 2d 667, 681–682 (M.D. Tenn. 2012). However, "Tennessee, unlike many other states and the federal courts, does not recognize the doctrine of equitable tolling in civil cases." *Id.* at 682. And "[t]o the extent state tolling law is inconsistent with federal law or policy, the court may impose the federal version of equitable tolling." *Id.* at 683. The Court, erring on the side of Plaintiff, chooses to eschew Tennessee's blanket non-recognition of tolling in civil cases and instead rely on federal equitable tolling principles to guide its analysis. "Equitable tolling focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Griffin v. Rogers*, 399 F.3d 626, 636 (6th Cir. 2005). As the Sixth Circuit has explained,

> [t]o determine whether equitable tolling is available to a plaintiff, a court considers five factors: (1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Jackson v. U.S.*, 751 F.3d 712, 719 (6th Cir. 2014). In light of the above-stated five factors, as well as the overarching purpose of equitable tolling, the Court is not persuaded that the limitations period should be tolled for Plaintiff's claims. As explained in detail above, *King* and *Jordan* clearly

---

The term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1039-40 (1997). Here, Plaintiff is referring to "tolling" in the former sense, *i.e.*, the postponement of the date on which the limitations period otherwise would begin to run.

counsel that Plaintiff's claims accrued upon the entry of his guilty plea and the dismissal of the remaining charges. *King* and *Jordan* presented facts almost identical to those at issue in this case insofar as the statute-of-limitations issue is concerned. Plaintiff was therefore on notice that he was required to file his suit within one year of the entry of his guilty plea and the dismissal of the remaining charges. With regard to whether *Ohnemus* prevented the accrual of Plaintiff's malicious prosecution claim, it is well-settled precedent that unpublished cases in the Sixth Circuit are not binding authority. Moreover, there can be little confusion as to the fact that the Sixth Circuit's analysis of the plaintiff's state-law malicious-prosecution claim in *Ohnemus* did not necessarily govern Plaintiff's § 1983 malicious-prosecution claim.

Plaintiff's assertion that he was diligently pursuing expungement of his charges also does not move the needle. (Doc. No. 21 at 5). Because expungement was not a threshold requirement for Plaintiff to file his claims, his efforts spent on obtaining that relief do not bear on whether he diligently pursued his rights under § 1983.

Plaintiff provides no argument as to why a decision to toll the limitations period would not prejudice Defendants, and therefore the Court declines to address this factor. In summary, the Court finds that binding precedent put Plaintiff on notice that his claims accrued (and that therefore the limitations period began running) upon the dismissal of the charges allegedly causing the harm for which he seeks damages. Plaintiff has not shown excusable ignorance (of either the length of limitations period or the date on which it began to run) to justify waiting almost two years after those events to file his claims, and therefore equitable tolling is not warranted.

<u>CONCLUSION</u>

The instant motion turns on whether Plaintiff's claims are barred by the applicable statute of limitations, and not on whether Plaintiff has adequately alleged a legitimate grievance for which he would have deserved a remedy had he timely filed his claims.

For the reasons stated herein, the Court finds that Plaintiff's claims are barred by the applicable statute of limitations. The Motion (Doc. No. 17) therefore will be GRANTED, and this action will be DISMISSED.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE